### Joe D. CRAWFORD, M.D.

v.

### Bryant D. PARIS, Jr., et al.

### Civ. Nos. PJM 91–3215, 91–982.

United States District Court,
D. Maryland.

Sept. 28, 1995.

Joe D. Crawford, M.D., Gaithersburg, MD, pro se.

Joseph P. Gill, J. Joseph Curran, Jr., Cynthia Grams Peltzman, Baltimore, MD, for defendants.

### *OPINION*

MESSITTE, District Judge.

In these consolidated actions Plaintiff Joe D. Crawford (Crawford) sues former and current members of the Maryland State Board of Medical Examiners (BME), its successor agency, the Board of Physician Quality Assurance (BPQA), and the Board of Review of the Department of Mental Health and Hygiene (BRE), alleging violations of his Constitutional rights to equal protection and due process under the 14th Amendment and 42 U.S.C. §§ 1981, 1983, 1984, 1985 and

---

1986.[1] He contends that Defendants have conspired to deny him a Maryland medical license due to his African–American heritage.

Defendants in Civil No. PJM 91–3125, Jane S. Buckley, Israel H. Weiner, M.D., J. Andrew Sumner, M.D., Ira N. Brecher, M.D., John F. Lynn, M.D., Reynaldo L. Lee–Llacer, M.D., Peter E. Dans, M.D., and Bernard S. Kleiman, M.D. have filed a Motion to Dismiss or, in the Alternative, for Summary Judgment; Crawford has filed a Motion for Summary Judgment and Issuance of Injunctive Order.

The Court, having considered the motions and oppositions to same, has determined to GRANT Defendants' Motion to Dismiss (rendering their Motion for Summary Judgment MOOT) and to DENY Plaintiff's Motion for Summary Judgment and related relief.[2]

## I.

On June 6, 1986, Crawford, based on a North Carolina medical license he purportedly held, applied to the Maryland BME for a Maryland medical license by way of endorsement. On his application, Crawford indicated that he had been the subject of an investigation by the North Carolina Board of Medical Examiners after his hospital privileges in that state had been restricted. Included with his application was an explanation that Crawford had surrendered his North Carolina medical license rather than submit to a psychiatric examination which the North Carolina Board had ordered in the course of its investigation. In response to an inquiry by the Maryland BME, the North Carolina Board confirmed that Crawford had in fact surrendered and the BME had accepted his license to practice medicine in that state.[3]

In October 1986, the Maryland BME informed Crawford of its intent to deny his licensure in Maryland based on § 14–504(26) of the Health Occupations Article of the Maryland Code, which authorized the BME to deny an application for licensure to any person who has been "subject to investigation or disciplinary action by a licensing or disciplinary authority or by a court of any state or country for an act that would be grounds for disciplinary action under this section and the licensee (i) (s)urrendered the license issued by the state or country or (ii) (a)llowed the license issued by the state or country to expire or lapse."[4] The BME informed Crawford of his right to a formal hearing before it within 30 days, if requested in writing.

More than three and one-half months later, on February 11, 1987, Crawford belatedly informed the BME that he was "exercising (his) right to request any hearing that (he might) be entitled to." Three months later, on May 14, 1987, he wrote another letter to the BME claiming that at the time he allegedly surrendered his license in North Carolina, § 14–504(26) of the Health Occupations Article was not in effect. Attached to that letter was a notarized affidavit signed by him attesting to his "possession of an authentic

1. In Civil No. PJM 91–3215, Crawford originally sued former and current members of the BPQA and the BRE, a BME investigator, an attorney, state court judges involved in the appeal of his case and others. The only defendants served, however, were the eight Defendant-movants and Clarke F. Ahlers, Esquire, who was dismissed from the case by Order of the Court dated September 9, 1994. Two of the Defendant-movants—John F. Lynn, M.D., and Bernard S. Kleiman, M.D., are deceased and no representative of either's estate has entered an appearance in these proceedings. In Civil No. PJM 91–982, Crawford has sued nine former members of the BME, but service of process has never been effected on any of those defendants.

2. In view of the Court's analysis in Civil No. PJM 91–3215, the Court, *sua sponte*, will dismiss Crawford's complaint in Civil No. PJM 91–982, despite the fact that no defendants have been served. *See Crowley Cutlery Co. v. United States,* 849 F.2d 273 (7th Cir.1988); *Brown v. District Unemployment Compensation Board,* 411 F.Supp. 1001 (D.D.C.1975). Alternatively the Court will dismiss Civil No. PJM 91–982 for lack of prosecution. *See* Local Rule 103.8.

3. Crawford advised the North Carolina Board of his intent to surrender his medical license by letter and the Board accepted the surrender by return mail. It appears, however, that Crawford never sent in his actual written license. This forms the basis for Crawford's claim before this Court that he still retains his North Carolina license and has never, in fact, surrendered the license to the North Carolina Board.

4. Md.Health Occ.Code Ann. § 14–504(26) has been recodified without change as Md.Health Occ.Code Ann. § 14–404(a)(24).

and original license to practice medicine" in North Carolina and to the fact that "the license has never been surrendered, revoked, or denied since 1979 when it was lawfully granted under North Carolina law."

One month later, in June 1987, prior to any formal hearing before the BME or the rendering of any final decision by it, Crawford appealed the proposed denial of his license to the Circuit Court for Montgomery County, which in December 1987 vacated the appeal and remanded the matter to the BME for hearing. On appeal to the Maryland Court of Special Appeals, the lower court's decision was affirmed. *Crawford v. Board of Medical Examiners,* No. 140 slip op. (Md.Ct. Spec.App. Oct. 11, 1982). Crawford's subsequent petition for *certiorari* to the Maryland Court of Appeals was denied. *Crawford v. Board of Medical Examiners,* 314 Md. 496, 551 A.2d 867 (1989).

On August 26, 1987, while the appeal of its initial proposed denial of licensure was pending, the BME, conceding that § 14–504(26) had not been in effect at the time of Crawford's surrender of his North Carolina license, advised Crawford that it had decided not to base its denial of licensure on that statute. Rather, said the BME, it proposed to deny the license on the grounds of Crawford's lack of good moral character, pursuant to § 14–504(1), dealing with fraud or deceit in attempting to obtain a license, specifically his misrepresentation as to the status of his North Carolina license in the notarized statement sent to the BME in May 1987.

After several unsuccessful attempts to notify him by certified mail, the BME, by personal service effected on February 5, 1988, notified Crawford that a contested hearing

on the newly proposed grounds for denial would be held March 17, 1988. When Crawford failed to appear on that date, the BME proceeded *ex parte* and on April 7, 1988, issued a final order denying him a license based on lack of good moral character, again on the grounds that Crawford had made a material misrepresentation regarding his possession of a North Carolina license in the notarized affidavit sent to the BME in May 1987.

Crawford appealed that decision to the BRE of the Department of Health and Mental Hygiene, which affirmed, and eventually Crawford appealed to the Montgomery County Circuit Court. When that court also affirmed, Crawford took a further appeal to the Maryland Court of Special Appeals.

On July 10, 1991, the Court of Special Appeals, in an unreported opinion, reversed the April 7, 1988 order of the BME, finding that Crawford had not intentionally deceived the BME regarding the surrender of his North Carolina license. In the appellate court's view, Crawford had only asserted that he had not surrendered his license prior to the enactment of Md. Health Occ.Code Ann. § 14–504(26), not that he had never surrendered it.[5] Misrepresentation on the application, therefore, could not be the basis for a denial of licensure. The BME was ordered to reconsider Crawford's application in that light.[6]

On October 22, 1991, the BPQA, successor agency to the BME,[7] notified Crawford that, in order to reconsider his licensure in Maryland consistent with the Court of Special Appeals remand, it was necessary for him to update his application, then more than five

---

**5.** Nevertheless, in his complaint in the present case, Crawford does assert that since he still retains physical possession of it, he never surrendered his license to the North Carolina Board.

**6.** The Court of Special Appeals noted, however, that: "On remand, we may not usurp the Board's administrative function by making a decision on the merits, *i.e.,* by ordering the Board to give appellant a license. *See O'Donnell v. Bassler,* 289 Md. 501, 509, 511, 425 A.2d 1003 (1981); 2 Am.Jur.2d *Administrative Law* § 765, at 665 (1962). Consequently, the Board must

reconsider whether appellant has met the requirements for licensure under section 14–305(b) and whether any of the specific circumstances enumerated in section 14–504—other than section 14–504(1)—require the denial of appellant's application for licensure." *Crawford v. Dep't. of Health and Mental Hygiene,* No. 1527, *slip. op.* at 19–20, 88 Md.App. 746 (Md.Ct.Spec.App., July 10, 1991).

**7.** On July 1, 1988 the Maryland General Assembly merged the BME and the Commission on Medical Discipline into the BPQA. *See* Chapter 10, Laws of Maryland, 1988.

years old.[8] Despite this request, as well as a second request dated January 14, 1992, and a third request dated December 21, 1992, Crawford forwarded no such information.[9] To this day, now going on four years, Crawford has yet to update his application with the BPQA, which is presumably able to consider the 1986 application at anytime. Should Crawford be dissatisfied with the BPQA's decision, he will be entitled to a formal hearing before a hearing officer, Md. State Gov't.Code Ann. § 10–207, and if he is aggrieved by the final decision of the Board after the formal hearing, he may appeal to the BRE and the Maryland state courts. Md. Health Occ.Code Ann. § 14–408(a).

## II.

Under the rule of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), federal courts are to abstain from exercising jurisdiction over certain matters pending in state judicial proceedings. *Younger* has been held to apply to state administrative proceedings that meet the following three conditions:

(1) there is an ongoing state judicial proceeding; (2) the proceeding implicates important state issues; and (3) there is an adequate opportunity to present federal claims in the proceeding.

*Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982); *See also Ohio Civil Rights Comm'n. v. Dayton Christian Sch., Inc.,* 477 U.S. 619, 627, 106 S.Ct. 2718, 2722–23, 91 L.Ed.2d 512 (1986).

All three conditions are clearly met in the present case. Proceedings before the BPQA are judicial in nature, affording due process protections and review by state courts. *See New Orleans Public Service v. Council of New Orleans,* 491 U.S. 350, 370, 109 S.Ct. 2506, 2519, 105 L.Ed.2d 298 (1989). The

proceedings serve an important state interest in protecting public health, safety and welfare by having only competent physicians licensed to practice in Maryland. *See Aitchison v. State,* 204 Md. 538, 105 A.2d 495, *cert. denied,* 348 U.S. 880, 75 S.Ct. 116, 99 L.Ed. 692 (1954); *Stillman v. Comm'n on Medical Discipline,* 291 Md. 390, 435 A.2d 747 (1981). Finally, all of the forums made available under Maryland's statutory scheme are adequate for an applicant to raise federal claims. *See* Md.Health Occ.Code Ann. § 14–408; Md. State Gov't.Code Ann. § 10–201 *et seq.; Carter v. Comm'n on Medical Discipline,* 639 F.Supp. 542 (D.Md.1986). If Crawford's appeal of the final judgment of the BPQA to the Maryland state courts were still pending, as it was before the BME when the first of these two consolidated cases was filed, this Court would abstain from exercising jurisdiction under the *Younger* doctrine.

In point of fact, however, since the Maryland Court of Special Appeals has remanded Crawford's application to the BPQA for further consideration, the procedural posture of this case is virtually the same as it was in June 1987 when Crawford appealed the BME's initial declaration of intent to deny licensure to the Circuit Court for Montgomery County. Now, as then, no contested hearing has occurred and no final decision rendered by the BPQA. The Court, accordingly, must dismiss this action for the same reason that the Maryland state courts vacated Crawford's appeal in December 1987. Inasmuch as no hearing has been held by the BPQA, much less no final decision has been rendered by it, any court challenge is premature. But there should be no doubt: Even if the BPQA issues a decision which Crawford feels aggrieved by, this Court, in view of the *Younger* analysis, would still abstain.

---

8. Maryland law provides that a physician who is licensed in Maryland must submit a renewal application at least every three years. Md. Health Occ.Code Ann. § 14–316. Periodic renewal allows the BPQA to collect current information including disciplinary actions taken by hospitals and other jurisdictions, changes of address and compliance with continuing medical education requirements. *Id.*

9. Crawford's contention appears to be that he is entitled to a Maryland license *instanter;* the Court finds the BPQA's request for current information, however, eminently reasonable and entirely consistent with the Court of Special Appeals remand.

### III.

With this disposition, the Court finds it unnecessary to consider the other arguments Defendants advance in support of their Motion for Summary Judgment, which is therefore rendered moot. At the same time, it follows that since Crawford has no right to be in federal court in the first place, his own Motion for Summary Judgment and Issuance of Injunctive Order must be denied.

A separate order implementing this decision will be entered.

### ORDER OF DISMISSAL

Upon consideration of Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment and Plaintiff's Opposition thereto, and Plaintiff's Motion for Summary Judgment and Issuance of Injunctive Order and Defendants' Opposition thereto, it is for the reasons set forth in the accompanying Opinion, this 28th day of September, 1995

ORDERED that Defendants' Motion to Dismiss is hereby GRANTED; and it is further

ORDERED that Defendants' Motion for Summary Judgment is hereby rendered MOOT; and it is further

ORDERED that Plaintiff's Motion for Summary Judgment and Issuance of Injunctive Order is hereby DENIED; and it is further

ORDERED that the Complaints in Civil Nos. PJM 91–3215 and PJM 91–982 are hereby DISMISSED.